PUBLIC RECREATION AND PARK ADMINISTRATION, Plaintiff and Appellee, *v.* MAYAGÜEZ INDIA BASEBALL CLUB, PONCE SPORTING CLUB, INC., and CAGUAS CRIOLLOS, INC., Defendants and Appellants.

Nos. 11046–47–48.   Argued November 10, 1954.—Decided April 29, 1955.

*J. Alemañy Sosa, Virgilio Brunet* and *Otero Suro & Otero Suro* for appellants. *José Trías Monge, Attorney General,* and *A. Torres Braschi, Assistant Attorney General,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The Isidoro García, Francisco Montaner, and Ildefonso Solá Morales athletic parks were leased by the Public Recreation and Park Administration[1] to Mayagüez India Baseball Club, Ponce Sporting Club, Inc., and Caguas Criollos, Inc., respectively, defendants herein, for the 1952–53 base-

---

[1]Hereafter we shall refer to the Public Recreation and Park Administration simply as the "Administration."

ball season which would open on October 15, 1952, and end in the latter part of February 1953. By clause "E" of the corresponding contracts it was agreed that "the lessee shall be responsible for the entire conservation of the park . . . including cleaning . . . conditioning of the land . . . *and shall be responsible further for the light and water expenses incurred during the entire season, as well as for the water and light consumed in the canteens.*" [2] (Italics ours.)

It appears, however, that prior to the making of the lease contracts the Administration accepted for those parks rate schedule LP–13 of the Water Resources Authority of Puerto Rico [3] for a period of one year, commencing July 1, 1952, and ending June 30, 1953. That schedule, as it appears from the transcript of the record, reads thus:

## "ELECTRIC SERVICE FOR OPEN-AIR ATHLETIC PARKS

### (Primary Distribution Voltage Service)

DESIGNATION: Schedule No. LP–13

AVAILABILITY: Whole Island of Puerto Rico.

APPLICATION: This rate schedule shall apply to commercial-consumers' service whose connected load for the lighting of open-air parks is 500 kilowatt-hours or more. Service will be rendered at a single point of delivery through only one meter.

CLASS OF SERVICE: Alternating current, 60 cycles, three-phase, three-wire, or four-wire; at 2,300, 4,000, 4,160, 4,600, 8,000, or other primary-distribution voltage, at the option of

---

[2] The lease of the baseball parks extended from October 1952 to February 1953, or until the termination of the final or the Caribe series, if any, but the lease of the canteens was for one year commencing on the date of the execution of the contract and ending on a like date of the following year.

[3] In the course of this opinion we shall refer to the Water Resources Authority of Puerto Rico merely as the "Authority."

the Authority. The consumer shall furnish the substation and necessary transformers.

PRICES:

MONTHLY ENERGY CHARGE: 5.5 cents per kilowatt-hour of energy consumed during the month.

FUEL COST ADJUSTMENT: That described above in this Notice of primary Distribution Voltage Service.[4]

MINIMUM CHARGE: $12 per kilowatt-hour of load connected for each 12-month period counted from the date service is connected, payable in four equal installments of $3 each per kilowatt-hour of load connnected, on November 30, December 31, January 31, and February 28, or on the last day of each of the four calendar months comprised in the entire greater part of the baseball season. Payment in full of the minimum charge for the 12-month period shall entitle the consumer to use any amount of kilowatt-hours (guaranteed minimum annual consumption) which may be purchased at the agreed price of 5.5 cents per kilowatt-hour, plus fuel adjustment.

Bills shall be rendered to the customer, who shall pay monthly for the metered service or the minimum charge fixed, whichever is greater, and all amounts billed to the customer shall be liquidated at the end of the 12-month period. If the sum of the kilowatt-hours consumed monthly during

---

[4] Fuel cost adjustment was made in accordance with the stipulation set forth in the Rate Schedule for Primary Distribution Voltage Service, to wit: "On the charge per kilowatt-hour for energy, a reduction or increase will be made at a rate equal to

$$\frac{R \times Btu \times 0.01}{\$N \times E} \times 0.80$$

for each one-cent increase above or reduction below $2 per barrel in the average price of fuel oil, based on the market price in Puerto Rico of a 42-gallon (U.S. barrel of 'Bunder C' oil, plus the cost of transportation, storage, and handling to the storage tanks of the respective generating thermoelectric stations of the Authority."

The meaning of the letters used in the above formula appears in the tariff.

the period is less than the guaranteed minimum annual consumption, the consumer shall be credited with any amount billed during such 12-month period in excess of the aggregate minimum charge fixed.  If the sum of kilowatt-hours consumed monthly during the period is greater than the guaranteed minimum annual consumption, the consumer shall be credited with any amount billed during such 12-month period in excess of the sum of the kilowatt-hours consumed during the period, at the rate of 5.5 cents per kilowatt-hour, plus fuel adjustment.

DURATION OF CONTRACT: Not less than one year, after which it may be rescinded on 60 days' notice by either party prior to the proposed effective date of rescission."

Upon receipt from the Authority of the October bills for the athletic parks in question, the Administration forwarded the same to the defendants requesting remittance of the full amount by check to the order of the Authority.[5]  As was done with respect to the bills for the following two months, defendants only forwarded to the Administration checks to the order of the Secretary of the Treasury for amounts covering only the number of kilowatt-hours of electric energy consumed by each during the month covered by the bill, computed at the rate of 5.5 cents per kilowatt-hour, plus fuel adjustment.  That is their contention.  Thus, in view of the discrepancy of opinion between plaintiff and defendants on the amounts which the latter were bound to pay for electric energy consumed in those parks, on January 21, 1953, the Administration filed in the Superior Court of Puerto Rico, San Juan Part, separate petitions for declaratory judgment [6] against the lessees, defendants herein.  After hearing the

---

[5] The October bills were for one-fourth of the total minimum charge. So were the bills for the following two months.

The Administration's contention is that the defendants were bound to pay the total amount of the bills.  If plaintiff is right, defendants would have paid at the end of the baseball season the total amount of the minimum charge.

[6] See Act No. 47 of 1931 (Sess. Laws, p. 378.)

parties at length, the lower court rendered in each of the cases the following declaratory judgment:

"In view of the foregoing findings of fact and conclusions of law, it is declared and resolved that the defendants are bound by the terms of the contract entered into by the parties to pay to plaintiff *the amount of electricity consumed in the parks* in question during the baseball season, at the rate of 5.5 cents per kilowatt-hour consumed, plus oil expenses above or below $2 per barrel in accordance with the agreed rate, subject to the adjustment to be made on June 30, 1953. Should it appear from such adjustment that the average cost per kilowatt-hour consumed is greater than 5.5 cents, the defendants shall be bound to pay the difference between the resulting cost and the amount paid. Should it appear that the average cost per kilowatt-hour consumed is less, then plaintiff shall be bound to reimburse to defendants the difference between the amount paid and the amount which they are actually bound to pay.

"The defendants shall be bound to pay the costs of this litigation." (Italics ours.)

On appeal, the defendants charge that the lower court erred (1) in applying to the contracts for the lease of parks entered into by defendants-appellants and plaintiff-appellee the manner of payment provided in Schedule LP–13 of the Water Resources Authority of Puerto Rico, which manner of payment was not made a part of such contracts, and (2) in rendering the judgment appealed from.

The judgment of the lower court is no doubt erroneous. It held that appellants were bound to pay to the Authority only for the energy actually consumed. However, it admitted the assertion of witness Rafael R. Ramírez, then chief of the Electric Power Division of the Authority, that the price at which the electric energy consumed by appellants should be computed could be affected by the minimum charge provided in the schedule. The obligation of the Administration to pay to the Authority the minimum amount provided in the schedule constituted, in substance, an obligation to pay for a certain amount of electric energy,

regardless of whether it was consumed. *Cf. Ashtabula Gas Company* v. *Public Utilities Comn.*, 133 N. E. 915, 916. In other words, the Administration guaranteed to the Authority that it would purchase a certain amount of electric power, and was therefore bound to pay for it at the rate stipulated in the schedule, even if it was not used. Defendants assumed a like obligation upon binding themselves to pay light expenses incurred during the baseball season.

■■ Now then, what does Schedule LP–13 provide with respect to the payment of the minimum charge? Its context is confusing. In referring first to the "minimum charge," it provides that *it will be paid at the rate of "$12 per kilowatt-hour* of load connected for each 12-month period counted from the date service is connected, *payable in four equal installments of $3 each per kilowatt-hour of load connected,* on November 30, December 31, January 31, and February 28, or on the last day of each of the four calendar months comprised in the entire greater part of the baseball season," and that "payment in full of the minimum charge for the 12-month period shall entitle the consumer to use any amount of kilowatt-hours (guaranteed minimum annual consumption) which may be purchased at the agreed price of 5.5 cents per kilowatt-hour, plus fuel adjustment." (Italics ours.) If the context of the schedule as respects the payment of the minimum charge ended there, there is no question that it would be clear. But the context further states that "bills shall be rendered to the customer, *who shall pay monthly for the metered service or the minimum charge fixed,* whichever is greater, and all amounts billed to the customer shall be liquidated at the end of the 12-month period"; that "If the sum of the kilowatt-hours *consumed monthly* during the period is less than the guaranteed minimum annual consumption, the consumer shall be credited with any amount billed during such 12-month period in excess of the aggregate minimum charge fixed"; and that

"If the sum of kilowatt-hours *consumed monthly* during the period is greater than the guaranteed minimum annual consumption, the consumer shall be credited with any amount billed during such 12-month period in excess of the sum of the kilowatt-hours consumed during the period, at the rate of 5.5 cents per kilowatt-hour, plus fuel adjustment." (Italics ours.) Therefore, it is no easy task to reconcile the second paragraph of the minimum charge with the first paragraph. The first paragraph reads, on the one hand, that the minimum charge shall be paid in four equal installments of $3 each at the end of the months specified or the months comprised in the greater part of the baseball season, while the second paragraph says that bills will be rendered and that the consumer shall pay *monthly* for the metered service or for the agreed minimum. Hence, the confusion, in our opinion, in the context of the schedule. It could not have been the intention of the Authority to demand payment of the minimum charge twice, or even 1 ⅔ times, namely, first, the full amount of the minimum charge during the four months of the baseball season, and, second, one-twelfth of such amount in each of the remaining months of the year. Such thing seems unreasonable and illogical.

Though we realize that the Authority rendered bills for one-fourth part of the minimum charge (see footnote 5), and that in so doing it acted in conformity with the first paragraph of the schedule dealing with "minimum charge," we believe, however, that the most logical interpretation of the schedule is that the same shall be paid monthly, pursuant to the afore-mentioned second paragraph. Otherwise stated, the minimum charge shall be paid monthly, by twelfth parts, or one-twelfth of the total amount of the bill each month. Thus interpreted, the full amount of the minimum bill shall be paid once only, not twice or 1 ⅔ times, as would be the case if both paragraphs of the schedule were applied.

Following this reasoning, let us consider defendants"

liability with respect to the electric energy consumed by them. Our opinion is that the defendants are bound to pay for the power as follows: During each and every month of the baseball season they shall pay one-twelfth of the minimum annual bill, or the energy actually consumed during the month, at the rate agreed in the schedule, namely, 5.5 cents per kilowatt-hour, plus fuel adjustment, whichever is greater. Thus, they shall pay at least one-third of the full amount of the annual minimum bill. However, since according to the schedule it is necessary to make a liquidation or adjustment at the end of each 12-month period, the payments made by defendants shall be subject to the result of such adjustment or liquidation, to wit: (1) if during each and every one of the months of the baseball season the defendants consume electric energy equivalent to one-twelfth of the guaranteed minimum consumption, or more, they shall be entitled to no reimbursement at the end of the 12-month period; (2) if the defendants, in one or more of the months of the season, fail to consume the minimum of electric energy for such month (in which, according to the monthly charge, they have paid the minimum consumption), but during the season they consume in toto the minimum for the four months, or more, upon making the adjustment they shall be reimbursed any amount paid in excess of the value of the energy actually consumed, at the rate of 5.5 cents per kilowatt-hour, plus fuel adjustment, regardless of whether the Administration fails to consume during the remainder of the year the energy guaranteed under the minimum charge for that period; (3) if the defendants fail to consume during the entire season the part of the minimum charge for such period, they shall not be entitled to reimbursement of any amount unless the Administration consumes during the remainder of the year electric energy in excess of the allotted minimum for the balance of such year, and the consumption by the Administration, added to the consumption by defend-

ants, exceeds the year's authorized minimum consumption. In such event, the defendants shall be entitled to reimbursement of any resulting amount paid in excess upon computing their actual consumption at the rate of 5.5 cents per kilowatt-hour, plus fuel adjustment.

The judgments will be reversed and others rendered instead in harmony with the terms of this opinion, without costs.[7]

Mr. Justice Pérez Pimentel did not participate herein.

---

[7] See § 10 of Act No. 47 of 1931, pp. 378, 380.